IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSE GUTIERREZ PULIDO,

    Petitioner,

  v.

JEFF SESSIONS, U.S. Attorney General;
ELAINE DUKE, Secretary of Homeland
Security; JUAN OSUNA, Acting Director,
Executive Office for Immigration Review;
ROBIN BARRETT, San Francisco ICE Field
Office Director,

    Respondents.
                               /

No. C 17-03683 WHA

**ORDER RE SECTION 2241 PETITION**

## INTRODUCTION

In this Section 2241 action, petitioner seeks a bond hearing. Respondent opposes. For the reasons herein, petitioner's motion is **GRANTED**.

## STATEMENT

Petitioner Jose Gutierrez Pulido is a Mexican citizen being detained by Immigration and Customs Enforcement at the West County Detention Facility in Richmond, California (Dkt. No. 1 at ¶¶ 1, 4).

In September 2016, ICE arrested Pulido for illegally re-entering the United States after a previous removal. Pulido had been removed from the United States on four prior occasions for illegal entry, once in 2004, and three times in 2008 (Dkt. No. 9-1 ¶¶ 3–4).

Following his 2016 arrest, ICE reinstated his removal order and took Pulido into custody. While in custody, Pulido claimed that he feared for his life should he be returned to Mexico, and sought to prevent his removal on that ground. Based on his claim, ICE referred

Pulido to an asylum pre-screening officer, to conduct a "reasonable fear" interview (Gallant Decl. ¶¶ 5, 7, 8; Exhs. B, C).

The Asylum Officer found that Pulido had a reasonable fear of persecution, and, pursuant to Section 208.31 of Title 8 of the Code of Federal Regulations referred Pulido's case to an immigration judge to conduct "withholding-only" proceedings through which Pulido could apply for withholding of removal and relief under the Convention Against Torture. Based upon a review of his file — which revealed a significant criminal history, and four previous illegal entries into the United States — ICE determined that Pulido would continue to be detained while he was awaiting a hearing on his application for withholding of removal (*id*. ¶¶ 9–10, 16 Exhs. C, F).

After seeking numerous continuances, Pulido eventually appeared before an immigration judge on May 23, 2017, for a review of his withholding of removal application. On June 7, 2017, the immigration judge denied Pulido's application for withholding of removal (*id.* ¶¶ 11–14; Exhs. H).

At the May 23 hearing, Pulido also moved for a bond hearing, which motion the immigration judge denied, finding that he lacked jurisdiction to conduct a bond hearing (*ibid*.).

Pulido timely appealed both decisions, and those appeals remain pending before the Board of Immigration Appeals. He remains in custody, and to date has not had a bond hearing (*id.* ¶ 15 Exh. I).

Pulido now moves for a writ of habeas corpus pursuant to Section 2241, challenging his denial of a bond hearing. He claims that his prolonged detention without a bond hearing violates the Immigration and Nationality Act, and the Fifth Amendment's due process and equal protection clauses, and seeks an order granting a bond hearing before another immigration judge or a district or magistrate judge in the United States District Court. Respondents oppose Pulido's motion arguing that he has failed to exhaust his administrative remedies so the issue is not ripe, and that even if he had met the exhaustion requirement, he is not entitled to a bond hearing under the applicable law.

**ANALYSIS**

**1. EXHAUSTION?**

Federal district courts are empowered to grant a writ of habeas corpus to relieve a petitioner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2241(c)(3). As a prudential matter, however, petitioners must ordinarily "exhaust available judicial and administrative remedies before seeking relief under Section 2241." *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). While not a statutory requirement, exhaustion is a prudential prerequisite in Section 2241 actions, generally employed where "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *See Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quotations and citations omitted). Courts may waive the prudential exhaustion requirement, however, "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citations and quotations omitted).

Here, Pulido contends that awaiting the BIA's decision is an exercise in futility. He observes that "the BIA would apply the[] same precedents" as the immigration judge applied, and dismiss Pulido's motion for a bond hearing on the same jurisdictional grounds (Dkt. No. 1 ¶ 8). Petitioner does not, however, provide support for his belief that the BIA would act in accord with the immigration judge. This, therefore is not a compelling argument.

Nevertheless, this case raises serious concerns that Pulido will suffer irreparable harm if unable to secure timely judicial consideration of his claim. *See McCarthy v. Madigan*, 503 U.S. 140, 147 (1992). Pulido has now been held for a year and two months without having been afforded a bond hearing. His appeal has been pending before the BIA since June 2017. Pulido suffers potentially irreparable harm every day that he remains in custody without a hearing,

3

which could ultimately result in his release from detention. Numerous courts in this district have declined to require exhaustion under similar circumstances, and this order finds that waiver of the prudential exhaustion requirement is likewise appropriate here. *See, e.g., Villalta v. Sessions*, No. 17-CV-05390-LHK, 2017 WL 4355182, at *1 (N.D. Cal. Oct. 2, 2017) (Judge Lucy Koh); *Palma-Platero v. Sessions*, No. CV1701484PHXDGCDKD, 2017 WL 3838678, at *2 (D. Ariz. Sept. 1, 2017) (Judge David Campbell) (identifying six other decisions in the district of Arizona waiving exhaustion).

### 2. PULIDO IS ENTITLED TO A BOND HEARING.

In *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011), our court of appeals held that aliens facing prolonged detention under Section 1231(a)(6) of Title 8 of the United States Code are entitled to a bond hearing. This is so because detention without an individualized determination regarding the potential for release "raise[s] serious constitutional concerns." *Id.* at 1092 (quoting *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d 942 (9th Cir. 2008)). To address these concerns, *Diouf* requires a bond hearing before an immigration judge for aliens who are denied release after 180 days in custody. *Diouf*, 634 F.3d at 1092.

Here, Pulido has been in custody for over a year without having been afforded such a hearing. The parties do not dispute that Pulido is being held pursuant to Section 1231(a)(6). Therefore, Pulido's continued detention without a bond hearing plainly violates the law in our circuit.

The government attempts to distinguish *Diouf* on a variety of grounds, none of which is persuasive. It argues that the petitioner in *Diouf* was differently situated from our petitioner because he had not previously been removed, had not illegally re-entered the United States, and sought review of his removal order (as opposed to only his withholding order) and therefore was eligible for more expansive relief than our petitioner (*see* Dkt. No. 9 at 12). None of these distinctions, however, carries any import. *Diouf's* holding did not preclude certain classes of Section 1231(a)(6) detainees from the basic relief of a bond hearing. Rather, it expressly extended its holding to all aliens detained under Section 1231(a)(6), all of whom face the same constitutional due process concerns during their detention. *Diouf*, 634 F.3d at 1085. The

4

concerns raised by the government regarding Pulido's past removal and illegal reentry do not affect whether Pulido is entitled to be heard on the issue of whether he should remain in custody (though they may play a role in the ultimate determination of whether he should be released pending appeal).

The government further contends that the relief Pulido requests is in tension with the Supreme Court's holding in *Zadvydas v. Davis*, 533 U.S. 678, 679 (2001). Not so. In *Zadvydas*, the issue was whether an alien detainee could be held indefinitely pending his removal from the United States. The Supreme Court held that he could not be. In doing so, however, it did not speak on the issue of bond hearings, instead more broadly holding that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized . . . ." *Id.* at 699. Indeed, *Diouf* came after *Zadvydas*, dealt with the same statute, and expressly observed that despite *Zadvydas*' focus on *indefinite* detention, *prolonged* detention likewise implicated the petitioner's liberty interests and required the procedural safeguard of a bond hearing. *Diouf*, 634 F.3d at 1087 n.8. There is no conflict between our court of appeals holding in *Diouf*, and the Supreme Court's holding in *Zadvudas*. Binding authority in our circuit requires that Pulido be granted a bond hearing.

The government is, however, correct that any bond hearing must take place before an immigration judge, and not, as Pulido requests, before a judge in the United States District Court, at least on this record. *See Diouf*, 634 F.3d at 1086. Accordingly, Pulido shall be heard by an immigration judge, who must determine whether the government has established that Pulido is a flight risk or will be a danger to the community. *See id.* at 1086.

Because this order finds that Pulido is entitled to a bond hearing pursuant to *Diouf*, it does not reach Pulido's argument concerning *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015).

**3. COSTS AND FEES.**

Pulido's attorney, Eliyahu Kaplunovsky, additional requests "reasonable attorney's fees, costs, and other disbursements pursuant to the Equal Access to Justice Act, 28 U.S.C. 2412." In this district, however, fee applications are to be made within fourteen days of entry of

5

judgment, and require counsel to meet and confer prior to making any such motion. Civil L. R. 54-5. Accordingly, should Attorney Kaplunovsky decide to bring such a motion, he may do so within fourteen days of the entry of judgment, and must do so in compliance with the Civil Local Rules for the United States District Court, Northern District of California.

**CONCLUSION**

Pulido's petition for relief under Section 2241 of Title 28 of the United States Code is **GRANTED**. Within **21 DAYS** of the date of this order, the government must provide Pulido with a hearing before an immigration judge. At that hearing, the government must establish that Pulido is a flight risk or a danger to the community, if that is its position, in order to keep him in detention. If it fails to do so, Pulido must promptly be released pending the outcome of his appeal.

**IT IS SO ORDERED.**

Dated: November 21, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE